UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHY CLOUSE,<br><br>          Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>          Defendant. | 1:04-CV-6545-SMS<br><br>DECISION AND ORDER DENYING<br>PLAINTIFF'S SOCIAL SECURITY<br>COMPLAINT (DOC. 1)<br><br>ORDER DIRECTING THE ENTRY OF<br>JUDGMENT FOR DEFENDANT JO ANNE B.<br>BARNHART, COMMISSIONER OF SOCIAL<br>SECURITY, AND AGAINST PLAINTIFF<br>DOROTHY CLOUSE |

Plaintiff is represented by counsel and is proceeding in forma pauperis with an action against the Commissioner of Social Security. Plaintiff seeks judicial review of a final decision of the Commissioner denying an application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment. The matter is currently before the Court on the parties' briefs, which have been submitted without oral argument to the Honorable Sandra M. Snyder, United States Magistrate Judge.

1                           PRIOR PROCEEDINGS

2          On February 18, 2003, Plaintiff applied for Supplemental

3   Security Income benefits, alleging disability since January 26,

4   2003. (A.R. 57-59.) Plaintiff's claim was denied initially and on

5   reconsideration. (A.R. 39-52.) Plaintiff then requested a hearing

6   before an administrative law judge (ALJ) of the Social Security

7   Administration. Plaintiff appeared with an attorney and testified

8   before the ALJ on December 8, 2003. On March 26, 2004, the ALJ

9   denied Plaintiff's application for benefits. (A.R. 15-19.)

10  Plaintiff appealed the ALJ's decision to the Appeals Council. On

11  September 8, 2004, the Appeals Council denied Plaintiff's appeal.

12  (A.R. 4-7.)

13         On December 12, 2004, Plaintiff filed the complaint in the

14  instant action; the administrative record was lodged by Defendant

15  on March 29, 2005. On September 8, 2005, Plaintiff filed an

16  opening brief. On October 6, 2005, Defendant filed a brief in

17  opposition.

18                        ADMINISTRATIVE FINDINGS

19         The ALJ concluded that Plaintiff had a combination of severe

20  impairments, including hepatitis C and post-incision drainage and

21  debridement of a right thigh abscess. (A.R. 18.) However, the ALJ

22  found that Plaintiff's impairments did not meet or equal an

23  impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1, Reg.

24  No. 4. (A.R. 19.) Rejecting Plaintiff's allegations regarding her

25  pain and subjective symptoms as not totally credible, the ALJ

26  found that Plaintiff had the residual functional capacity to

27  perform light work with a limitation of occasional climbing and

28  could return to her past relevant work as a bartender. (A.R. at

                                    2

19.) The ALJ also found, in the alternative, that based on Plaintiff's residual functional capacity, age, education, and employment experience, a finding of "not disabled" was required under Rule 202.20 or 202.21 of the Medical-Vocational Guidelines found at 20 C.F.R., Pt. 404, Subpt. P, App. 2. (A.R. at 19.) Accordingly, Plaintiff was not disabled at any time through the date of the decision.

<u>Issues Presented</u>

The following issues are presented for decision:

1. Whether the ALJ properly determined that Plaintiff did not suffer from a listed impairment;

2. Whether the ALJ appropriately rejected Plaintiff's subjective complaints in assessing Plaintiff's residual functional capacity;

3. Whether the ALJ properly rejected the functional limitations proposed by Dr. Dawson in determining Plaintiff's residual functional capacity; and

4. Whether the ALJ erred in finding that Plaintiff could perform past relevant work.

<u>Facts</u>

I. <u>Plaintiff's Testimony</u>

Plaintiff testified that she was born on March 12, 1959, and finished high school. (A.R. 26.) She stated that she was hospitalized in 2002 and subsequently lost her job as a bartender.[1] (A.R. 28.) She suffered from headaches, dizziness, bloating, hot and cold flashes, hormone problems, hypoglycemia,

---

[1]All pertinent hospital, physical therapy, and treatment records indicate Plaintiff was actually hospitalized on January 26, 2003 and released February 7, 2003.

and mood swings. (A.R. 35-37.) Plaintiff alleged fatigue, excessive sleep, and depression, although she had not sought treatment for the depression. (A.R. 32, 36.) Plaintiff further testified that her main physician was Dr. Cunningham. (A.R. 30.)

Plaintiff alternated between living with her boyfriend and her sister. (A.R. 26.) She had a driver's license and drove a car approximately three times a week. (A.R. 27). She cleaned and washed dishes daily and went to the store three to four times a week. (A.R. 32-33.) She visited friends at their homes or at restaurants several times a week. (A.R. 33.) She made wood crafts, cutting wood with a hand saw and staining or burning the wood, for about twenty hours a week. (A.R. 34.)

Plaintiff alleged that she was unable to work because she was infected with hepatitis C. (A.R. 29.) She was unable to sit or stand for more than thirty minutes or lift more than ten pounds. (A.R. 32.) She had previously taken hormone supplements but was not taking any medication at the time of the hearing. (A.R. 35.)

II. <u>Medical Evidence</u>

The record contains treatment notes from Drs. Jacqueline Galang, Antonio Coirin, Praveena Sarma, Grant Dawson, and Jason Cunningham, covering the relevant period from January 2003 to November 2003.

On January 26, 2003, Plaintiff was hospitalized for a severely infected abscess in her right inner thigh, accompanied by cellulitis. (A.R. 183.) Plaintiff claimed that the abscess was the result of a spider bite. (A.R. 232.) Plaintiff obtained a surgical consultation with Dr. Coirin, who performed the

4

1   incision, drainage, and debridement of the abscess on January 27,

2   2003. (A.R. 187.) Plaintiff received both oral and intravenous

3   antibiotics to prevent infection of the abscess. (A.R. 183.)

4          Routine liver tests conducted while Plaintiff was

5   hospitalized showed that Plaintiff suffered from elevated liver

6   enzymes. (A.R. 184.) Plaintiff subsequently tested positive for

7   hepatitis C. (A.R. 183.) Dr. Praveena Sarma, an infectious

8   disease expert, diagnosed Plaintiff with acute hepatitis C

9   infection with moderate viremia and recommended follow-up

10  treatment. (A.R. 188.)

11         Plaintiff obtained treatment for her thigh abscess and

12  physical therapy at the Stanislaus County Health Services Agency

13  beginning in February 2003. Throughout February, Plaintiff made

14  "excellent progress" in healing, although she initially suffered

15  from a severe rash. (A.R. 212-215.) Treatment notes from March

16  10, 2003 indicate that Plaintiff's thigh was "non-tender" with

17  minimal signs and symptoms of drainage. (A.R. 232.) On March 12,

18  2003, a treating source at the Health Services Agency reported

19  that the abscess was "one hundred percent closed." (A.R. 265.)

20  Plaintiff had no further contact with the Health Services Agency

21  physical therapy and wound care unit after April 20, 2003. (A.R.

22  264.)

23         On April 7, 2003, Dr. Dawson recommended Interferon

24  treatment for Plaintiff's hepatitis C. (A.R. 228.) Dr. Dawson

25  observed that Plaintiff was asymptomatic except for symptoms of

26  fatigue. (A.R. 228.) On June 2, 2003, Dr. Dawson completed a

27  disability report in which he opined that Plaintiff was unable to

28  work due to limited endurance and side effects resulting from the

5

1  Interferon treatment. (A.R. 269.) Dr. Dawson stated that the
2  duration of Plaintiff's therapy-related condition would extend
3  from May 1, 2003, to July 15, 2003. (A.R. 269.) However, the
4  record contains three identical copies of Dr. Dawson's report.
5  (A.R. 67, 226, 269.) One copy contains a notation by an
6  unidentified source with the initials "DC" that the duration of
7  the disability allegedly resulting from the Interferon treatment
8  "is in the process of being extended." (A.R. 67.) The notation
9  was dated September 4, 2003. (A.R. 67.)

10       In August 2003, state agency physician Dr. David Pong
11  completed a residual functional capacity assessment of Plaintiff.
12  (A.R. 237-244.) Dr. Pong opined that Plaintiff could occasionally
13  lift twenty pounds, frequently lift ten pounds, and sit, stand,
14  and walk about six hours out of an eight-hour workday. (A.R. at
15  238.) Dr. Pong found no evidence that headaches, dizziness, or
16  Plaintiff's hormone problems significantly limited Plaintiff's
17  functional capacity. (A.R. 242.)

18       On September 4, 2003, Plaintiff saw Dr. Cunningham and
19  complained of a headache in her frontal temporal lobe. Dr.
20  Cunningham noted that the headache was a tension type. (A.R.
21  271.) On November 14, 2003, Plaintiff again saw Dr. Cunningham,
22  who recorded symptoms of abdominal discomfort. (A.R.  270.) Dr.
23  Cunningham further noted that aside from the abdominal pain,
24  Plaintiff did not have any new complaints and was there to fill
25  out medical forms. (A.R. 270.) Dr. Cunningham opined in his
26  treatment notes that Plaintiff did not qualify for disability.
27  (A.R. 270.)

28       In November 2003, Dr. Cunningham completed a disability

1  questionnaire. (A.R. 266.) Dr. Cunningham found that Plaintiff

2  suffered from abdominal pain, bloating, and swelling in the lower

3  extremities following ambulation. However, he concluded that

4  Plaintiff could perform sedentary and light work with unlimited

5  sitting, standing for between thirty minutes to one hour at a

6  time, and standing and walking for between two to four hours a

7  day total. (A.R. 266.)

8                    Scope and Standard of Review

9       Congress has delineated a limited scope of judicial review

10  of the Commissioner's decision to deny benefits under Title XVI

11  of the Social Security Act. In reviewing findings of fact with

12  respect to such determinations, the Court must determine whether

13  the decision of the Commissioner is supported by substantial

14  evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than

15  a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402

16  (1971), but less than a preponderance. Sorenson v. Weinberger,

17  514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant

18  evidence as a reasonable mind might accept as adequate to support

19  a conclusion." Richardson, 402 U.S. at 401. The Court must

20  consider the record as a whole, weighing both the evidence that

21  supports and evidence that detracts from the Commissioner's

22  conclusion; it may not simply isolate a portion of evidence that

23  supports the decision. Jones v. Heckler, 760 F.2d 993, 995 (9th

24  Cir. 1985). It is immaterial that the evidence would support a

25  finding contrary to that reached by the Commissioner; the

26  determination of the Commissioner as to a factual matter will

27  stand if supported by substantial evidence because it is the

28  Commissioner's job, and not the Court's, to resolve conflicts in

7

1  the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th
2  Cir 1975).

3       In weighing the evidence and making findings, the
4  Commissioner must apply the proper legal standards. <u>Burkhart v.</u>
5  <u>Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must
6  review the whole record and uphold the Commissioner's
7  determination that the claimant is not disabled if the Secretary
8  applied the proper legal standards, and if the Commissioner's
9  findings are supported by substantial evidence. <u>See</u>, <u>Sanchez v.</u>
10 <u>Secretary of Health and Human Services</u>, 812 F.2d 509, 510 (9th
11 Cir. 1987); <u>Jones v. Heckler</u>, 760 F.2d at 995. If the Court
12 concludes that the ALJ did not use the proper legal standard, the
13 matter will be remanded to permit application of the appropriate
14 standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th Cir. 1987).

15                              <u>Analysis</u>

16      I. <u>Disability</u>

17      In order to qualify for benefits, a claimant must establish
18 that she is unable to engage in substantial gainful activity due
19 to a medically determinable physical or mental impairment which
20 has lasted or can be expected to last for a continuous period of
21 not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A
22 claimant must demonstrate a physical or mental impairment of such
23 severity that the claimant is not only unable to do the
24 claimant's previous work, but cannot, considering age, education,
25 and work experience, engage in any other kind of substantial
26 gainful work which exists in the national economy. 42 U.S.C.
27 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th
28 Cir. 1989). The burden of establishing a disability is initially

on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments listed in Appendix I of the regulations; 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work; and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy. See 20 C.F.R. § 416.920.

II. Listed Impairment

Plaintiff argues that the ALJ erred in finding that Plaintiff did not suffer from an impairment listed in 20 C.F.R., Part 404, Subpart. P, Appendix 1.

9

1   It is Plaintiff's burden to establish that his or her

2 impairment met a listing. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5

3 (1987). Mere diagnosis of a listed impairment is not sufficient

4 to sustain a finding of disability; there must also be the

5 findings required in the listing. <u>Young v. Sullivan</u>, 911 F.2d

6 180, 183 (9th Cir. 1990); 20 C.F.R. § 416.925(d). Generally,

7 specific medical findings are needed to support the diagnosis and

8 the required level of severity. 20 C.F.R. § 416.925(c).

9   The Commissioner is not required to state why a claimant

10 failed to satisfy every different section of the listing of

11 impairments; it is sufficient to evaluate the evidence upon which

12 the ultimate factual conclusions are based. <u>Gonzales v. Sullivan</u>,

13 914 F.2d 1197, 1200-01 (9th Cir. 1990). In addition to showing

14 that she suffers from a listed impairment, a claimant must also

15 show that her impairment meets the twelve-month continuous

16 duration requirement. <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th

17 Cir. 1995) (<u>cert</u>. <u>denied</u>, <u>Roberts v. Chater</u>, 517 U.S. 1122

18 (1996)); <u>see</u>, 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 416.909,

19 416.920(d).

20   The ALJ stated the following:

21   There is no evidence that the claimant is under
22   continuing surgical management for treatment of her
    right thigh abscess or that that condition has resulted
    in a loss of major function in her lower extremity.
23   Thus, the criteria of Section 1.08 for a Listing soft
    tissue injury are not satisfied here.
24
25   Moreover, the claimant's medical records do not
    describe esophageal varices, a shunt operation,
26   persistently elevated serum bilirubin, ascites, hepatic
    encephalopathy or the other findings necessary to
    establish Listing level chronic liver disease under
27   Section 5.05. Finally, the medical findings contained
    in the record are not equal in severity and duration to
28   any Listed findings. 20 C.F.R. 416.920(d) and 416.926.

10

1  (A.R. 16.)

2       The record supports the ALJ's conclusion that Plaintiff
3  did not suffer from an impairment or combination of impairments
4  that met or equaled a listing. As to the thigh abscess, the
5  treatment notes and physical therapy reports do not indicate that
6  Plaintiff was under continuing surgical management directed
7  towards the restoration of a major function as required by
8  listing Section 1.08 to establish disability. (A.R. 264-65;
9  Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix
10 1, § 1.08.) The treatment notes and physical therapy reports
11 indicate that Plaintiff initially suffered from infection and a
12 severe rash, but made "excellent progress" throughout February
13 2003. (A.R. 213-14.) Plaintiff's abscess was "one-hundred percent
14 closed" by March 12, 2003. (A.R. 265.) Plaintiff reportedly had
15 no further contact with the Health Services physical therapy and
16 wound care center after April 20, 2003. (A.R. 264.) Finally,
17 Plaintiff's subsequent treatment notes make no mention of any
18 further complications arising from the incision and drainage of
19 Plaintiff's abscess. Accordingly, the ALJ's conclusion that
20 Plaintiff was not under continuing surgical management as
21 required under listing Section 1.08 is supported by substantial
22 evidence.

23      The ALJ's conclusion that Plaintiff did not meet listing
24 Section 5.05 is likewise supported by substantial evidence.
25 Although Plaintiff was diagnosed with acute hepatitis C infection
26 with moderate viremia (A.R. 188), and Plaintiff's biopsy returned
27 an independent confirmation of hepatitis C (A.R. 278-9), the
28 treatment notes and test results show no indication that

Plaintiff suffered from the requisite complications contained in Listing 5.05, including (1) ascites, (2) serum bilirubin of 2.5 milligrams per deciliter, (3) hepatic cell necrosis, (4) esophageal varices, or (5) hepatic encephalopathy. Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 5.05. Plaintiff asserts that Dr. Dawson reported that she had liver pathologies that were "consistent" with listing Section 5.05, but Plaintiff refers only to a Department of Social Services disability assessment in which Dr. Dawson opined that Plaintiff would be temporarily disabled from May to July 2003. (A.R. 67, 226, 269.) Furthermore, an examination of Dr. Dawson's assessment reveals that he stated that Plaintiff's temporary inability to work was caused by "constitutional symptoms due to interferon treatment" rather than any liver pathology or evidence of a listed impairment. (A.R. 67, 226, 269). Aside from inaccurately characterizing Dr. Dawson's assessment, Plaintiff does not offer any plausible theory of how the evidence in the record combined to meet or equal a listing, and Plaintiff does not point to evidence that shows equality with a listing. Even if Plaintiff could show that her impairments met a listing, she has not pointed to evidence that would satisfy the twelve-month duration requirement. Under these circumstances, Plaintiff has not demonstrated that the ALJ erred. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001).

Here, the ALJ covered the evidence in detail in the opinion, and the ALJ's analysis of the evidence resulted in a conclusion that Plaintiff suffered impairments, but that Plaintiff's impairments were not disabling. (A.R. 16-17.) The fact that

1  Plaintiff had some symptoms relating to a listing did not
2  establish that her impairments met or equaled a listing.
3  Accordingly, the Court rejects Plaintiff's assertion that the ALJ
4  erred in finding that Plaintiff did not suffer from a listed
5  impairment.

6      III. <u>Plaintiff's Subjective Complaints</u>

7      Plaintiff argues that the ALJ failed to provide clear and
8  convincing reasons, supported by substantial evidence, for
9  discrediting Plaintiff's subjective claims regarding the severity
10 of her impairments.

11     The existence and severity of a person's reaction to a
12 physical ailment are subjective phenomena, the extent of which
13 cannot be objectively measured. <u>Byrnes v. Shalala</u>, 60 F.3d 639,
14 642 (9th Cir. 1995). In order to reject a claimant's subjective
15 complaints, the ALJ must provide specific, cogent reasons for the
16 disbelief. <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).
17 Once the claimant introduces medical evidence of an underlying
18 impairment that could reasonably be expected to produce some
19 degree of the subjective symptoms, the Commissioner may not
20 discredit the claimant's testimony as to subjective symptoms
21 merely because they are unsupported by objective evidence such as
22 objective medical findings. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282
23 (9th Cir. 1996). Unless there is affirmative evidence tending to
24 show that the claimant is malingering, the reasons for rejecting
25 the claimant's testimony must be clear and convincing, and the
26 ALJ must set forth the rejection by identifying what testimony is
27 not credible and what evidence undermines the claimant's
28 complaints. <u>Lester v. Chater</u>, 81 F.3d at 834. The findings of the

13

1  adjudicator must be properly supported by the record and must be

2  sufficiently specific to allow a reviewing court to conclude that

3  the adjudicator rejected the claimant's testimony on permissible

4  grounds and did not arbitrarily discredit a claimant's testimony.

5  Bunnell v. Sullivan, 947 F.2d 341, 345-46; Byrnes v. Shalala, 60

6  F.3d at 641-42 (9th Cir. 1995); see, 20 C.F.R. § 416.929(c).

7      Social Security Ruling 96-7p directs the adjudicator to

8  consider not only objective medical evidence of signs, laboratory

9  findings, and medical opinions, but also the following factors

10 when assessing the credibility of an individual's statements:

11         1. The individual's daily activities;
           2. The location, duration, frequency, and intensity
12            of the individual's pain or other symptoms;
           3. Factors that precipitate and aggravate the symptoms;
13         4. The type, dosage, effectiveness, and adverse
              side effects of any medication for pain or other
14            symptoms;
           5. Treatment, other than medication, for relief of
15            pain or other symptoms;
           6. Any measures other than treatment used by the
16            individual to relieve the pain or other symptoms; and
           7. Any other factors concerning the individual's
17            functional limitations and restrictions due to
              pain or other symptoms.
18
   See also Bunnell v. Sullivan, 947 F.2d at 346.
19
20      Here, the ALJ identified as incredible Plaintiff's assertion

21 that she was unable to do any work due to an alleged inability to

   stand for more than thirty minutes; lack of strength; dizziness,
22
   mood swings, bloating, and hot and cold flashes; swelling and
23
   fatigue; and depression. (A.R. 16-18.) The ALJ rejected
24
   Plaintiff's subjective claims in part based on the nature and
25
   extent of her daily activities. (A.R. 18.) A claimant's ability
26
   to engage in activities of daily living to the extent that he or
27
   she spends a substantial part of his day engaged in pursuits
28

                                    14

involving the performance of physical functions that are
transferable to the work setting is relevant; a specific finding
as to this fact may be sufficient to discredit a claimant's
allegations. Morgan v. Commissioner of Social Sec. Admin., 169
F.3d 595, 600 (9th Cir. 1999); Thomas v. Barnhart, 278 F.3d 947,
959 (9th Cir. 2002).

The ALJ stated the following:

> Rather, I note that despite her allegedly disabling
> symptoms, the claimant has been able to engage in
> varied activities that are consistent with an ability
> to perform light work including cooking, housekeeping,
> vacuuming, washing dishes, doing wood crafts, playing
> pool, going to the movies and going out to restaurants
> 2-3 times each week (Exhibit 6E and hearing testimony).
> I also note that the claimant acknowledged that despite
> her condition she continues to smoke against medical
> advice (hearing testimony).

(A.R. 18.)

It was appropriate for the ALJ to consider Plaintiff's daily
activities in rejecting her subjective complaints, and the record
contains substantial evidence supporting the ALJ's conclusion
that Plaintiff's activities were consistent with the ability to
perform light work.[2] Although Plaintiff testified that she
scheduled only one activity a day and was usually awake only six
hours out of any given twenty-four hour period (A.R. 32, 36), she
also stated that she engaged in approximately twenty hours a week
of hands-on wood crafting, went to the store three to four times

---

[2] Light work is defined by 20 C.F.R. § 416.967(b)(SSI) as follows:

Light work involves lifting no more than 20 pounds at a time with frequent
lifting or carrying of objects weighing up to 10 pounds. Even though the
weight lifted may be very little, a job is in this category when it requires a
good deal of walking or standing, or when it involves sitting most of the time
with some pushing and pulling of arm or leg controls. To be considered capable
of performing a full or wide range of light work, you must have the ability to
do substantially all of these activities.

1  a week, and went to restaurants with her friends two to three
2  times a week. (A.R. 33.) Moreover, Plaintiff stated that she
3  cooked for her boyfriend and his son, washed dishes every day,
4  and occasionally visited the library. (A.R. 32, 34, 36.) The
5  nature and frequency of these activities is largely consistent
6  with the functional requirements of light work. Accordingly,
7  substantial evidence supports the ALJ's conclusion that Plaintiff
8  engaged in daily activities consistent with light work despite
9  her allegations of disabling symptoms.

10      The record likewise supports the ALJ's rejection of
11  Plaintiff's subjective complaints due to her failure to follow
12  her physician's recommendation to stop smoking. An ALJ may rely
13  on a claimant's inadequately explained failure to seek treatment
14  or follow his or her physician's advice in rejecting a subjective
15  complaint of disabling pain. Fair v. Bowen, 885 F.2d 597, 604 (9th
16  Cir. 1989). Plaintiff testified that she smoked approximately
17  fifteen or twenty cigarettes a day even though her doctor advised
18  that she stop smoking due to her health problems. (A.R. 31.)
19  Plaintiff offered no explanation for her failure to quit smoking,
20  and she offered no evidence that she had attempted to quit.
21  Substantial evidence supports the ALJ's rejection of Plaintiff's
22  subjective claims of disability based on the inconsistency
23  between her allegations of disabling pain and her unexplained
24  failure to follow her treating physician's advice.

25      Thus, the Court rejects Plaintiff's challenge to the ALJ's
26  credibility determination. The ALJ provided clear and convincing
27  reasons, supported by substantial evidence, for rejecting
28  Plaintiff's subjective complaints.

1        IV. <u>Medical Opinion Evidence</u>

2        Plaintiff argues that the ALJ failed to provide specific and

3   legitimate reasons, supported by substantial evidence, for

4   rejecting Dr. Dawson's medical opinion. Plaintiff points to Dr.

5   Dawson's conclusion that Plaintiff was unable to work from May to

6   July 2003 due to limited endurance and many symptoms associated

7   with Interferon treatment. (A.R. 67, 226,269.)

8        The opinion of a treating physician is entitled to deference

9   because of a greater opportunity to observe the patient as an

10  individual and because the purpose of the relationship is to cure

11  the patient. <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169

12  F.3d 595, 600 (9th Cir. 1999). However, an ALJ may disregard a

13  treating physician's opinion whether or not it is contradicted.

14  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989).

15       A treating physician's opinion that is controverted by other

16  medical opinions may be rejected by an ALJ only if specific,

17  legitimate reasons for doing so are provided and supported by

18  substantial evidence in the record. <u>Rodriguez v. Bowen</u>, 876 F.2d

19  759, 762 (9th Cir. 1989). This burden is met by stating a detailed

20  and thorough summary of the facts and conflicting clinical

21  evidence, stating the interpretation of the evidence, and making

22  findings. <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1408 (9th Cir 1986). A

23  failure to set forth a reasoned rationale for disregarding a

24  particular treating physician's findings is legal error. <u>Cotton</u>

25  <u>v. Bowen</u>, 799 F.2d at 1408.

26       The medical opinion of a nontreating doctor may be relied

27  upon instead of that of a treating physician only if the ALJ

28  provides specific and legitimate reasons supported by substantial

1  evidence in the record. Holohan v. Massanari, 246 F.3d 1195, 1202

2  (9th Cir. 2001) (citing Lester v. Chater, 81 F.3d 821, 830 (9th

3  Cir. 1995). The contradictory opinion of a nontreating but

4  examining physician constitutes substantial evidence, and may be

5  relied upon instead of that of a treating physician, where it is

6  based on independent clinical findings that differ from those of

7  the treating physician. Andrews v. Shalala, 53 F.3d 1035, 1041

8  (9th Cir. 1995). The opinion of a nontreating, nonexamining

9  physician can amount to substantial evidence so long as other

10 evidence in the record supports those findings. Saelee v.Chater,

11 94 F.3d 520, 522 (9th Cir. 1996).

12      Similarly, the opinion of a treating physician that speaks

13 to the ultimate issue of disability (i.e., whether a claimant is

14 capable of any work, given his or her limitations) may be

15 rejected by an ALJ only with clear and convincing reasons

16 supported by substantial evidence in the record if the opinion is

17 uncontradicted; a treating physicians's controverted opinion on

18 the ultimate issue of disability may be rejected by an ALJ if the

19 ALJ provides specific and legitimate reasons. Holohan v.

20 Massanari, 246 F.3d 1195, 1202-02 (9th Cir. 2001).

21      In the present case, the ALJ stated the following:

22          In June 2003 Dr. Dawson from the Health
            Services Agency stated that the claimant was
23          unable to work due to limited endurance and
            many constitutional symptoms associated with
24          Interferon treatment (Exhibit 8F/2). While I
            normally afford the opinion of a treating
25          physician much deference, I reject Dr.
            Dawson's opinion becuase it is not well-
26          supported by substantial evidence in the
            record. Specifically, treatment records from
27          Health Services Agency fail to corroborate
            the symptoms associated with Interferon
28          treatment referred to by Dr. Dawson (see,

18

1
2

       Exhibits 8F, 10F, 13F, 14F and 15F).  <u>See</u>,
Social Security Ruling 96-2p.

          Dr. Dawson's opinion is also
inconsistent with the opinion of another
physician at Health Services Agency, Dr.
Cunningham, who stated in November 2003 that
the claimant's "condition does not qualify
for disability in my opinion" (Exhibit
15F/4). Dr. Cunningham further concluded that
although the claimant was experiencing
bloating, abdominal pain and lower extremity
swelling with ambulation, she could do
sedentary and light work with unlimited
sitting and standing for 30 minutes at a time
up to 4 hours per day (Exhibit 14F).

(A.R. 17.)

    Dr. Dawson opined on June 2, 2003, that Plaintiff could not

perform any tasks calling for a sustained effort and she suffered

from limited endurance and "constitutional problems" associated

with Interferon treatment. (A.R. 67, 226, 269.) Dr. Dawson

concluded that Plaintiff was unable to work for a temporary

period extending from May 2003 to July 2003. (A.R. 67, 226, 269.)

    The ALJ rejected Dr. Dawson's opinion due in part to a lack

of corroborating objective medical evidence. (A.R. 17.) An ALJ

may reject the medical opinion of a claimant's treating physician

where the opinion is unsupported by clinical findings and is also

contradicted by the opinions of other examining physicians. <u>Young

v. Heckler</u>, 803 F.2d 963, 968 (9th Cir. 1986). Moreover, a

conclusory opinion that is unsubstantiated by relevant medical

documentation may be rejected. <u>See Johnson v. Shalala</u>, 60 F.3d

1428, 1432-33 (9th Cir. 1995).

    The record supports the ALJ's conclusion that Dr. Dawson's

opinion was not supported by objective clinical findings.

Plaintiff's treatment notes from February 2003 through November

2003 indicate that Plaintiff had active hepatitis C with elevated enzyme levels. (A.R. 275.) On April 7, 2003, Dr. Dawson noted that Plaintiff suffered from fatigue. However, it appears that Plaintiff received a referral for Interferon therapy from Dr. Dawson at her April 7, 2003, appointment, and thus it is unclear whether the fatigue noted by Dr. Dawson at that appointment could have been caused by the Interferon therapy. Similarly, other occasional symptoms described in the treatment notes such as a headache, weakness, and abdominal discomfort, are not identified as being causally related to Plaintiff's Interferon therapy. (A.R. 270-272.) Moreover, the record is unclear about both the duration and intensity of the symptoms, and it does not specify the period during which Plaintiff actually underwent Interferon therapy. In fact, Plaintiff stated during her hearing on December 8, 2003, that she still needed to have a liver biopsy to ascertain whether she was a candidate for Interferon treatment. (A.R. 30.)

In summary, neither Dr. Dawson's nor Dr. Cunningham's treatment notes identify any constitutional problems as being caused by Interferon therapy. (A.R. 227, 228, 233, 270-73.) Accordingly, substantial evidence supports the ALJ's conclusion that Dr. Dawson's assessment of Plaintiff's inability to work was not corroborated by objective medical evidence.

The ALJ also rejected Dr. Dawson's opinion because of a conflicting opinion rendered by Dr. Cunningham. (A.R. 17.) Dr. Cunningham opined that Plaintiff suffered from abdominal pain, bloating, and swelling in the lower extremities following ambulation, but she could perform sedentary and light work with

unlimited sitting, standing for between thirty minutes to one hour at a time, and standing and walking for between two to four hours a day total. (A.R. 266.) The parties disagree on whether Dr. Cunningham was a treating or examining physician, and the ALJ did not specify whether he considered Dr. Cunningham a treating or examining source.

In order for Dr. Cunningham to be considered a treating source, he must have provided Plaintiff with medical treatment or evaluation and must have had an ongoing treatment relationship; acceptable medical evidence must establish that Plaintiff saw the source with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for Plaintiff's medical condition. 20 C.F.R. § 416.902. It is established that examining a patient once and writing a brief report based primarily on medical history and subjective reports of symptoms, where the physician has agreed to assist the Plaintiff in the social security case, is insufficient. Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016 (9th Cir. 1992). Evidence to be considered includes the number of times the source examined or observed the patient, the length of time of the treatment relationship, the involvement of the physician in prescribing medications or other treatment, the extent of any communication with other members of any treatment team, the extent of any report or findings, and whether the frequency of treatment reflected acceptable medical practice. See Benton ex. rel. Benton v. Barnhart, 331 F.3d 1030, 1035-1039 (9th Cir. 2003).

Here, Dr. Cunningham saw Plaintiff in September and November 2003. Plaintiff stated during her hearing that she considered Dr.

Cunningham her "main medical doctor." (A.R. 30.) On September 4, 2003, Dr. Cunningham noted that Plaintiff was alert, well nourished, had clear lungs, regular heart rate and rhythm, and normal insight and judgment. (A.R. 271.) He further noted that Plaintiff had negative lab results (test type unclear) and complained of a headache. (A.R. 271.) Finally, Dr. Cunningham made a referral for Plaintiff to return to the clinic in six months for a checkup. (A.R. 271.) On November 14, 2003, Plaintiff again saw Dr. Cunningham, who noted that Plaintiff complained of abdominal discomfort but otherwise had no new complaints and was "here to fill out medical forms." (A.R. 270.) Dr. Cunningham made a referral for Plaintiff to come back to the clinic for a checkup as required. (A.R. 270.)

The record is inconclusive as to whether Dr. Cunningham was a treating or examining physician. Dr. Cunningham apparently had an ongoing relationship with Plaintiff spanning several months, in which he made medical findings, gave Plaintiff referrals, and analyzed lab results. (A.R. 270-71.) However, the record does not indicate the extent of Dr. Cunningham's communications with any other members of Plaintiff's treatment team, such as her gastrointestinal specialist, and it is clear that Plaintiff's second visit to Dr. Cunningham was motivated by her desire to have medical forms completed. (A.R. 270.) Thus the Court finds the record inconclusive as to Dr. Cunningham's status.

Assuming that Dr. Cunningham was only an examining physician, as Plaintiff alleges, the ALJ nevertheless provided specific and legitimate reasons for rejecting the opinion of Dr. Dawson based on the contradictory opinion of Dr. Cunningham. The

1  ALJ specifically noted that Dr. Cunningham opined that Plaintiff
2  "does not qualify for disability." (A.R. 17, 270.) The ALJ
3  further noted that Dr. Cunningham assessed a residual functional
4  capacity allowing Plaintiff to perform light and sedentary work
5  with standing for up to four hours per eight hour workday and
6  unlimited sitting. (A.R. 17, 266.) Dr. Cunningham saw Plaintiff
7  at a pertinent time in relation to her claims of disability and
8  made independent clinical findings consistent with the ALJ's
9  conclusion that Plaintiff's symptoms would not interfere with her
10 ability to perform work. (A.R. 17, 266, 270-71.) As noted above,
11 Dr. Cunningham found only one instance of abdominal pain and made
12 no mention of limited endurance or any other constitutional
13 symptoms specifically associated with Interferon treatment. (A.R.
14 270.) Accordingly, the ALJ's rejection of Dr. Dawson's opinion
15 based on the contradictory medical opinion of Dr. Cunningham is
16 supported by substantial evidence.

17     As an additional basis for rejecting Dr. Dawson's opinion,
18 the ALJ relied on the disability assessment of Dr. Pong, a state
19 agency physician. (A.R. 17.) The findings of a nontreating,
20 nonexamining physician can amount to substantial evidence so long
21 as other evidence in the record supports those findings. Saelee
22 v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). Dr. Pong opined that
23 Plaintiff could occasionally lift twenty pounds, frequently lift
24 ten pounds, and sit, stand, and walk about six hours out of an
25 eight-hour workday. (A.R. at 238.) Dr. Pong's conclusion that
26 Plaintiff's Interferon treatment would not significantly limit
27 Plaintiff's functional capacity was supported by the findings of
28 Dr. Cunningham and the absence of any notation of constitutional

1  problems associated with Interferon treatment in Plaintiff's

2  medical records. (A.R. 27-75, 242, 279-80.) Dr. Pong's opinion

3  was thus supported by the medical evidence in the record,

4  including independent clinical findings. Accordingly, the ALJ

5  properly attributed significant weight to the opinion of Dr.

6  Pong, and the ALJ's reliance upon Dr. Pong's opinion was

7  supported by substantial evidence.

8      Thus, the Court rejects Plaintiff's assertion that the ALJ

9  improperly discredited Dr. Dawson in assessing Plaintiff's

10 residual functional capacity. The Court notes that even if Dr.

11 Dawson's opinion had been entitled to controlling weight,

12 Plaintiff nevertheless failed to produce evidence sufficient to

13 show that her impairment met the twelve-month duration

14 requirement to qualify for benefits.

15     V. Past Relevant Work

16     Plaintiff asserts that "the ALJ did not obtain all necessary

17 past relevant work information to deny at Step IV, as required by

18 SSR 82-62." (Pl.'s Br. 5.) The Court interprets this language as

19 a challenge to both the sufficiency of the evidence and the

20 technical adequacy of the ALJ's finding that Plaintiff could

21 perform past relevant work as a bartender.

22     An adjudicator may consider the nature of a claimant's past

23 occupation either as it was performed in the national economy or

24 as the worker herself or himself performed it. Pinto v.

25 Massanari, 249 F.3d 840, 845 (9th Cir. 2001); Sanchez v. Secretary

26 of Health and Human Services, 812 F.2d 509, 511 (9th Cir. 1987).

27 The Commissioner routinely relies on the Dictionary of

28

Occupational Titles (DOT)[3] in determining the skill level of past work or ability to perform other work. The Commissioner may rely on the general job categories of the DOT and Selected Characteristics[4] as applicable to a claimant's prior work in determining if a claimant can perform past relevant work; see 20 C.F.R. §§ 404.1566(d)(1) (use as the primary source of reliable job information); § 404.1569 (use to classify exertional and skill requirements). Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).

Although the Commissioner must make fairly detailed findings in support of administrative decisions to permit intelligent review by the courts, the Commissioner need not discuss all the evidence in the record when making his or her findings. Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394 (9th Cir. 1984). In the present case, Plaintiff relies on Social Security Ruling (SSR) 82-62, which requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82-62. Social Security Rulings are issued to clarify the Act's implementing regulations and the agency's policies. Although they do not have the force of law, they represent the Commissioner's interpretation of the agency's regulations, and they will be given some deference if they are not plainly

---

[3]All references to the DOT are to the United States Department of Labor, Dictionary of Occupational Titles, (4[th]ed. 1991).

[4]All references to the Selected Characteristics are to the United States Dept. of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, (1993).

erroneous or inconsistent with the statute or regulations.
Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001);
Quang Van Hang v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

Plaintiff's reliance on Social Security Ruling 82-62 as a basis for remand is without merit. First, the ALJ found that Plaintiff could perform light work with occasional climbing. (A.R. 18.) Second, the ALJ expressly found that based on her residual functional capacity, Plaintiff could perform the job of bartender. (A.R. 18.) Finally, the ALJ cited the specific bartender job category in the DOT at 312.474-010. (A.R. 18.) The ALJ's findings explicitly satisfy Social Security Ruling 82-62's requirements as to Plaintiff's residual functional capacity and its relationship to her past relevant work. (A.R. 18.) The ALJ's reference to Plaintiff's "past work as a bartender" and his immediate citation to the bartender job category in the DOT (A.R. 18), which contains a detailed description of the physical demands of the bartender position, is sufficiently specific to satisfy Social Security Ruling 82-62 and provide the Court with an opportunity for intelligent review.

Reference to the DOT shows that the bartender position cited by the ALJ requires the capacity to perform light work. DOT 242. This exertional requirement is consistent with the residual functional capacity assigned to Plaintiff by the ALJ. (A.R. 18.) The Selected Characteristics entry indicates that climbing is not an activity required in the course of performing work as a

bartender. <u>Selected Characteristics</u> at 365. Thus, the limitation to occasional climbing would not prevent Plaintiff from working as a bartender. Accordingly, substantial evidence supports the ALJ's conclusion that Plaintiff has the capacity to perform past relevant work as a bartender.

The Court declines to reach Plaintiff's argument regarding the ALJ's alternative finding that Plaintiff could perform other work in the national economy because the ALJ did not err in denying disability benefits to Plaintiff at Step IV in the sequential evaluation process.

VI. <u>Disposition</u>

Based on the reasoning above, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a whole and was based on proper legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff Dorothy Clouse.

IT IS SO ORDERED.

**Dated:   June 28, 2006**          **/s/ Sandra M. Snyder**
icido3                       UNITED STATES MAGISTRATE JUDGE

27