# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHY CLOUSE, | 1:04-CV-6545-OWW-SMS |
|        Plaintiff, | FINDINGS AND RECOMMENDATION TO |
|   v. | DENY PLAINTIFF'S SOCIAL SECURITY |
| | COMPLAINT AND TO ENTER JUDGMENT |
| JO ANNE B. BARNHART, | FOR DEFENDANT (DOC. 1) |
| Commissioner of Social | |
| Security, | |
| | |
|       Defendant. | |

Plaintiff is represented by counsel and is proceeding in forma pauperis with an action against the Commissioner of Social Security. Plaintiff seeks judicial review of a final decision of the Commissioner denying an application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act.

The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C.§ 636(b) and Local Rule 72-302(c)(15).

### PRIOR PROCEEDINGS

On February 18, 2003, Plaintiff applied for Supplemental Security Income benefits, alleging disability since January 26, 2003. (A.R. 57-59.) Plaintiff's claim was denied initially and on reconsideration. (A.R. 39-52.) Plaintiff then requested a hearing

1

1 before an administrative law judge (ALJ) of the Social Security
2 Administration. Plaintiff appeared with an attorney and testified
3 before the ALJ on December 8, 2003. On March 26, 2004, the ALJ
4 denied Plaintiff's application for benefits. (A.R. 15-19.)
5 Plaintiff appealed the ALJ's decision to the Appeals Council. On
6 September 8, 2004, the Appeals Council denied Plaintiff's appeal.
7 (A.R. 4-7.)

8     On December 12, 2004, Plaintiff filed the complaint in the
9 instant action; the administrative record was lodged by Defendant
10 on March 29, 2005. On September 8, 2005, Plaintiff filed an
11 opening brief. On October 6, 2005, Defendant filed a brief in
12 opposition.

13                    ADMINISTRATIVE FINDINGS

14     The ALJ concluded that Plaintiff had a combination of severe
15 impairments, including hepatitis C and post-incision drainage and
16 debridement of a right thigh abscess. (A.R. 18.) However, the ALJ
17 found that Plaintiff's impairments did not meet or equal an
18 impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1, Reg.
19 No. 4. (A.R. 19.) Rejecting Plaintiff's allegations regarding her
20 pain and subjective symptoms as not totally credible, the ALJ
21 found that Plaintiff had the residual functional capacity to
22 perform light work with a limitation of occasional climbing and
23 could return to her past relevant work as a bartender. (A.R. at
24 19.) The ALJ also found, in the alternative, that based on
25 Plaintiff's residual functional capacity, age, education, and
26 employment experience, a finding of "not disabled" was required
27 under Rule 202.20 or 202.21 of the Medical-Vocational Guidelines
28 found at 20 C.F.R., Pt. 404, Subpt. P, App. 2. (A.R. at 19.)

Accordingly, Plaintiff was not disabled at any time through the date of the decision.

Issues Presented

The following issues are presented for decision:

1. Whether the ALJ properly determined that Plaintiff did not suffer from a listed impairment;

2. Whether the ALJ appropriately rejected Plaintiff's subjective complaints in assessing Plaintiff's residual functional capacity;

3. Whether the ALJ properly rejected the functional limitations proposed by Dr. Dawson in determining Plaintiff's residual functional capacity; and

4. Whether the ALJ erred in finding that Plaintiff could perform past relevant work.

Facts

I. Plaintiff's Testimony

Plaintiff testified that she was born on March 12, 1959, and finished high school. (A.R. 26.) She stated that she was hospitalized in 2002 and subsequently lost her job as a bartender.[1] (A.R. 28.) She suffered from headaches, dizziness, bloating, hot and cold flashes, hormone problems, hypoglycemia, and mood swings. (A.R. 35-37.) Plaintiff alleged fatigue, excessive sleep, and depression, although she had not sought treatment for the depression. (A.R. 32, 36.) Plaintiff further testified that her main physician was Dr. Cunningham. (A.R. 30.)

Plaintiff alternated between living with her boyfriend and

---

[1]All pertinent hospital, physical therapy, and treatment records indicate Plaintiff was actually hospitalized on January 26, 2003 and released February 7, 2003.

3

1  her sister. (A.R. 26.) She had a driver's license and drove a car
2  approximately three times a week. (A.R. 27). She cleaned and
3  washed dishes daily and went to the store three to four times a
4  week. (A.R. 32-33.) She visited friends at their homes or at
5  restaurants several times a week. (A.R. 33.) She made wood
6  crafts, cutting wood with a hand saw and staining or burning the
7  wood, for about twenty hours a week. (A.R. 34.)

8      Plaintiff alleged that she was unable to work because she
9  was infected with hepatitis C. (A.R. 29.) She was unable to sit
10  or stand for more than thirty minutes or lift more than ten
11  pounds. (A.R. 32.) She had previously taken hormone supplements
12  but was not taking any medication at the time of the hearing.
13  (A.R. 35.)

14      II. <u>Medical Evidence</u>

15      The record contains treatment notes from Drs. Jacqueline
16  Galang, Antonio Coirin, Praveena Sarma, Grant Dawson, and Jason
17  Cunningham, covering the relevant period from January 2003 to
18  November 2003.

19      On January 26, 2003, Plaintiff was hospitalized for a
20  severely infected abscess in her right inner thigh, accompanied
21  by cellulitis. (A.R. 183.) Plaintiff claimed that the abscess was
22  the result of a spider bite. (A.R. 232.) Plaintiff obtained a
23  surgical consultation with Dr. Coirin, who performed the
24  incision, drainage, and debridement of the abscess on January 27,
25  2003. (A.R. 187.) Plaintiff received both oral and intravenous
26  antibiotics to prevent infection of the abscess. (A.R. 183.)

27      Routine liver tests conducted while Plaintiff was
28  hospitalized showed that Plaintiff suffered from elevated liver

4

enzymes. (A.R. 184.) Plaintiff subsequently tested positive for hepatitis C. (A.R. 183.) Dr. Praveena Sarma, an infectious disease expert, diagnosed Plaintiff with acute hepatitis C infection with moderate viremia and recommended follow-up treatment. (A.R. 188.)

Plaintiff obtained treatment for her thigh abscess and physical therapy at the Stanislaus County Health Services Agency beginning in February 2003. Throughout February, Plaintiff made "excellent progress" in healing, although she initially suffered from a severe rash. (A.R. 212-215.) Treatment notes from March 10, 2003 indicate that Plaintiff's thigh was "non-tender" with minimal signs and symptoms of drainage. (A.R. 232.) On March 12, 2003, a treating source at the Health Services Agency reported that the abscess was "one hundred percent closed." (A.R. 265.) Plaintiff had no further contact with the Health Services Agency physical therapy and wound care unit after April 20, 2003. (A.R. 264.)

On April 7, 2003, Dr. Dawson recommended Interferon treatment for Plaintiff's hepatitis C. (A.R. 228.) Dr. Dawson observed that Plaintiff was asymptomatic except for symptoms of fatigue. (A.R. 228.) On June 2, 2003, Dr. Dawson completed a disability report in which he opined that Plaintiff was unable to work due to limited endurance and side effects resulting from the Interferon treatment. (A.R. 269.) Dr. Dawson stated that the duration of Plaintiff's therapy-related condition would extend from May 1, 2003, to July 15, 2003. (A.R. 269.) However, the record contains three identical copies of Dr. Dawson's report. (A.R. 67, 226, 269.) One copy contains a notation by an

unidentified source with the initials "DC" that the duration of the disability allegedly resulting from the Interferon treatment "is in the process of being extended." (A.R. 67.) The notation was dated September 4, 2003. (A.R. 67.)

In August 2003, state agency physician Dr. David Pong completed a residual functional capacity assessment of Plaintiff. (A.R. 237-244.) Dr. Pong opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and sit, stand, and walk about six hours out of an eight-hour workday. (A.R. at 238.) Dr. Pong found no evidence that headaches, dizziness, or Plaintiff's hormone problems significantly limited Plaintiff's functional capacity. (A.R. 242.)

On September 4, 2003, Plaintiff saw Dr. Cunningham and complained of a headache in her frontal temporal lobe. Dr. Cunningham noted that the headache was a tension type. (A.R. 271.) On November 14, 2003, Plaintiff again saw Dr. Cunningham, who recorded symptoms of abdominal discomfort. (A.R. 270.) Dr. Cunningham further noted that aside from the abdominal pain, Plaintiff did not have any new complaints and was there to fill out medical forms. (A.R. 270.) Dr. Cunningham opined in his treatment notes that Plaintiff did not qualify for disability. (A.R. 270.)

In November 2003, Dr. Cunningham completed a disability questionnaire. (A.R. 266.) Dr. Cunningham found that Plaintiff suffered from abdominal pain, bloating, and swelling in the lower extremities following ambulation. However, he concluded that Plaintiff could perform sedentary and light work with unlimited sitting, standing for between thirty minutes to one hour at a

1  time, and standing and walking for between two to four hours a
2  day total. (A.R. 266.)

3                    Scope and Standard of Review

4       Congress has delineated a limited scope of judicial review
5  of the Commissioner's decision to deny benefits under Title XVI
6  of the Social Security Act. In reviewing findings of fact with
7  respect to such determinations, the Court must determine whether
8  the decision of the Commissioner is supported by substantial
9  evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than
10 a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402
11 (1971), but less than a preponderance. Sorenson v. Weinberger,
12 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant
13 evidence as a reasonable mind might accept as adequate to support
14 a conclusion." Richardson, 402 U.S. at 401. The Court must
15 consider the record as a whole, weighing both the evidence that
16 supports and evidence that detracts from the Commissioner's
17 conclusion; it may not simply isolate a portion of evidence that
18 supports the decision. Jones v. Heckler, 760 F.2d 993, 995 (9th
19 Cir. 1985). It is immaterial that the evidence would support a
20 finding contrary to that reached by the Commissioner; the
21 determination of the Commissioner as to a factual matter will
22 stand if supported by substantial evidence because it is the
23 Commissioner's job, and not the Court's, to resolve conflicts in
24 the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th
25 Cir 1975).

26      In weighing the evidence and making findings, the
27 Commissioner must apply the proper legal standards. Burkhart v.
28 Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

                                7

1  review the whole record and uphold the Commissioner's

2  determination that the claimant is not disabled if the Secretary

3  applied the proper legal standards, and if the Commissioner's

4  findings are supported by substantial evidence. See, Sanchez v.

5  Secretary of Health and Human Services, 812 F.2d 509, 510 (9th

6  Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If the Court

7  concludes that the ALJ did not use the proper legal standard, the

8  matter will be remanded to permit application of the appropriate

9  standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th Cir. 1987).

10                            Analysis

11       I. Disability

12       In order to qualify for benefits, a claimant must establish

13  that she is unable to engage in substantial gainful activity due

14  to a medically determinable physical or mental impairment which

15  has lasted or can be expected to last for a continuous period of

16  not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A

17  claimant must demonstrate a physical or mental impairment of such

18  severity that the claimant is not only unable to do the

19  claimant's previous work, but cannot, considering age, education,

20  and work experience, engage in any other kind of substantial

21  gainful work which exists in the national economy. 42 U.S.C.

22  1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th

23  Cir. 1989). The burden of establishing a disability is initially

24  on the claimant, who must prove that the claimant is unable to

25  return to his or her former type of work; the burden then shifts

26  to the Commissioner to identify other jobs that the claimant is

27  capable of performing considering the claimant's residual

28  functional capacity, as well as her age, education and last

8

fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d
1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific
sequential determinations in the process of evaluating a
disability: 1) whether the applicant engaged in substantial
gainful activity since the alleged date of the onset of the
impairment, 2) whether solely on the basis of the medical
evidence the claimed impairment is severe, that is, of a
magnitude sufficient to limit significantly the individual's
physical or mental ability to do basic work activities; 3)
whether solely on the basis of medical evidence the impairment
equals or exceeds in severity certain impairments listed in
Appendix I of the regulations; 4) whether the applicant has
sufficient residual functional capacity, defined as what an
individual can still do despite limitations, to perform the
applicant's past work; and 5) whether on the basis of the
applicant's age, education, work experience, and residual
functional capacity, the applicant can perform any other gainful
and substantial work within the economy. <u>See</u> 20 C.F.R. § 416.920.

II. <u>Listed Impairment</u>

Plaintiff argues that the ALJ erred in finding that
Plaintiff did not suffer from an impairment listed in 20 C.F.R.,
Part 404, Subpart. P, Appendix 1.

It is Plaintiff's burden to establish that his or her
impairment met a listing. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5
(1987). Mere diagnosis of a listed impairment is not sufficient
to sustain a finding of disability; there must also be the
findings required in the listing. <u>Young v. Sullivan</u>, 911 F.2d

1  180, 183 (9th Cir. 1990); 20 C.F.R. § 416.925(d). Generally,

2  specific medical findings are needed to support the diagnosis and

3  the required level of severity. 20 C.F.R. § 416.925(c).

4      The Commissioner is not required to state why a claimant

5  failed to satisfy every different section of the listing of

6  impairments; it is sufficient to evaluate the evidence upon which

7  the ultimate factual conclusions are based. Gonzales v. Sullivan,

8  914 F.2d 1197, 1200-01 (9th Cir. 1990). In addition to showing

9  that she suffers from a listed impairment, a claimant must also

10  show that her impairment meets the twelve-month continuous

11  duration requirement. Roberts v. Shalala, 66 F.3d 179, 182 (9th

12  Cir. 1995) (cert. denied, Roberts v. Chater, 517 U.S. 1122

13  (1996)); see, 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 416.909,

14  416.920(d).

15      The ALJ stated the following:

16      There is no evidence that the claimant is under
   continuing surgical management for treatment of her
17  right thigh abscess or that that condition has resulted
   in a loss of major function in her lower extremity.
18  Thus, the criteria of Section 1.08 for a Listing soft
   tissue injury are not satisfied here.
19
   Moreover, the claimant's medical records do not
20  describe esophageal varices, a shunt operation,
   persistently elevated serum bilirubin, ascites, hepatic
21  encephalopathy or the other findings necessary to
   establish Listing level chronic liver disease under
22  Section 5.05. Finally, the medical findings contained
   in the record are not equal in severity and duration to
23  any Listed findings. 20 C.F.R. 416.920(d) and 416.926.

24  (A.R. 16.)

25      The record supports the ALJ's conclusion that Plaintiff

26  did not suffer from an impairment or combination of impairments

27  that met or equaled a listing. As to the thigh abscess, the

28  treatment notes and physical therapy reports do not indicate that

1   Plaintiff was under continuing surgical management directed

2   towards the restoration of a major function as required by

3   listing Section 1.08 to establish disability. (A.R. 264-65;

4   Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix

5   1, § 1.08.) The treatment notes and physical therapy reports

6   indicate that Plaintiff initially suffered from infection and a

7   severe rash, but made "excellent progress" throughout February

8   2003. (A.R. 213-14.) Plaintiff's abscess was "one-hundred percent

9   closed" by March 12, 2003. (A.R. 265.) Plaintiff reportedly had

10  no further contact with the Health Services physical therapy and

11  wound care center after April 20, 2003. (A.R. 264.) Finally,

12  Plaintiff's subsequent treatment notes make no mention of any

13  further complications arising from the incision and drainage of

14  Plaintiff's abscess. Accordingly, the ALJ's conclusion that

15  Plaintiff was not under continuing surgical management as

16  required under listing Section 1.08 is supported by substantial

17  evidence.

18       The ALJ's conclusion that Plaintiff did not meet listing

19  Section 5.05 is likewise supported by substantial evidence.

20  Although Plaintiff was diagnosed with acute hepatitis C infection

21  with moderate viremia (A.R. 188), and Plaintiff's biopsy returned

22  an independent confirmation of hepatitis C (A.R. 278-9), the

23  treatment notes and test results show no indication that

24  Plaintiff suffered from the requisite complications contained in

25  Listing 5.05, including (1) ascites, (2) serum bilirubin of 2.5

26  milligrams per deciliter, (3) hepatic cell necrosis, (4)

27  esophageal varices, or (5) hepatic encephalopathy. Listing of

28  Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 5.05.

1  Plaintiff asserts that Dr. Dawson reported that she had liver
2  pathologies that were "consistent" with listing Section 5.05, but
3  Plaintiff refers only to a Department of Social Services
4  disability assessment in which Dr. Dawson opined that Plaintiff
5  would be temporarily disabled from May to July 2003. (A.R. 67,
6  226, 269.) Furthermore, an examination of Dr. Dawson's assessment
7  reveals that he stated that Plaintiff's temporary inability to
8  work was caused by "constitutional symptoms due to interferon
9  treatment" rather than any liver pathology or evidence of a
10 listed impairment. (A.R. 67, 226, 269). Aside from inaccurately
11 characterizing Dr. Dawson's assessment, Plaintiff does not offer
12 any plausible theory of how the evidence in the record combined
13 to meet or equal a listing, and Plaintiff does not point to
14 evidence that shows equality with a listing. Even if Plaintiff
15 could show that her impairments met a listing, she has not
16 pointed to evidence that would satisfy the twelve-month duration
17 requirement. Under these circumstances, Plaintiff has not
18 demonstrated that the ALJ erred. See Lewis v. Apfel, 236 F.3d
19 503, 514 (9th Cir. 2001).

20     Here, the ALJ covered the evidence in detail in the opinion,
21 and the ALJ's analysis of the evidence resulted in a conclusion
22 that Plaintiff suffered impairments, but that Plaintiff's
23 impairments were not disabling. (A.R. 16-17.) The fact that
24 Plaintiff had some symptoms relating to a listing did not
25 establish that her impairments met or equaled a listing.
26 Accordingly, the Court rejects Plaintiff's assertion that the ALJ
27 erred in finding that Plaintiff did not suffer from a listed
28 impairment.

1        III. <u>Plaintiff's Subjective Complaints</u>

2        Plaintiff argues that the ALJ failed to provide clear and

3  convincing reasons, supported by substantial evidence, for

4  discrediting Plaintiff's subjective claims regarding the severity

5  of her impairments.

6        The existence and severity of a person's reaction to a

7  physical ailment are subjective phenomena, the extent of which

8  cannot be objectively measured. <u>Byrnes v. Shalala</u>, 60 F.3d 639,

9  642 (9th Cir. 1995). In order to reject a claimant's subjective

10 complaints, the ALJ must provide specific, cogent reasons for the

11 disbelief. <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).

12 Once the claimant introduces medical evidence of an underlying

13 impairment that could reasonably be expected to produce some

14 degree of the subjective symptoms, the Commissioner may not

15 discredit the claimant's testimony as to subjective symptoms

16 merely because they are unsupported by objective evidence such as

17 objective medical findings. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282

18 (9th Cir. 1996). Unless there is affirmative evidence tending to

19 show that the claimant is malingering, the reasons for rejecting

20 the claimant's testimony must be clear and convincing, and the

21 ALJ must set forth the rejection by identifying what testimony is

22 not credible and what evidence undermines the claimant's

23 complaints. <u>Lester v. Chater</u>, 81 F.3d at 834. The findings of the

24 adjudicator must be properly supported by the record and must be

25 sufficiently specific to allow a reviewing court to conclude that

26 the adjudicator rejected the claimant's testimony on permissible

27 grounds and did not arbitrarily discredit a claimant's testimony.

28 <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-46; <u>Byrnes v. Shalala</u>, 60

F.3d at 641-42 (9th Cir. 1995); see, 20 C.F.R. § 416.929(c).

Social Security Ruling 96-7p directs the adjudicator to consider not only objective medical evidence of signs, laboratory findings, and medical opinions, but also the following factors when assessing the credibility of an individual's statements:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and adverse side effects of any medication for pain or other symptoms;
5. Treatment, other than medication, for relief of pain or other symptoms;
6. Any measures other than treatment used by the individual to relieve the pain or other symptoms; and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

See also Bunnell v. Sullivan, 947 F.2d at 346.

Here, the ALJ identified as incredible Plaintiff's assertion that she was unable to do any work due to an alleged inability to stand for more than thirty minutes; lack of strength; dizziness, mood swings, bloating, and hot and cold flashes; swelling and fatigue; and depression. (A.R. 16-18.) The ALJ rejected Plaintiff's subjective claims in part based on the nature and extent of her daily activities. (A.R. 18.) A claimant's ability to engage in activities of daily living to the extent that he or she spends a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to the work setting is relevant; a specific finding as to this fact may be sufficient to discredit a claimant's allegations. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); Thomas v. Barnhart, 278 F.3d 947,

959 (9th Cir. 2002).

The ALJ stated the following:

> Rather, I note that despite her allegedly disabling
> symptoms, the claimant has been able to engage in
> varied activities that are consistent with an ability
> to perform light work including cooking, housekeeping,
> vacuuming, washing dishes, doing wood crafts, playing
> pool, going to the movies and going out to restaurants
> 2-3 times each week (Exhibit 6E and hearing testimony).
> I also note that the claimant acknowledged that despite
> her condition she continues to smoke against medical
> advice (hearing testimony).

(A.R. 18.)

It was appropriate for the ALJ to consider Plaintiff's daily activities in rejecting her subjective complaints, and the record contains substantial evidence supporting the ALJ's conclusion that Plaintiff's activities were consistent with the ability to perform light work.[2] Although Plaintiff testified that she scheduled only one activity a day and was usually awake only six hours out of any given twenty-four hour period (A.R. 32, 36), she also stated that she engaged in approximately twenty hours a week of hands-on wood crafting, went to the store three to four times a week, and went to restaurants with her friends two to three times a week. (A.R. 33.) Moreover, Plaintiff stated that she cooked for her boyfriend and his son, washed dishes every day, and occasionally visited the library. (A.R. 32, 34, 36.) The nature and frequency of these activities is largely consistent

---

[2]Light work is defined by 20 C.F.R. § 416.967(b)(SSI) as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

with the functional requirements of light work. Accordingly, substantial evidence supports the ALJ's conclusion that Plaintiff engaged in daily activities consistent with light work despite her allegations of disabling symptoms.

The record likewise supports the ALJ's rejection of Plaintiff's subjective complaints due to her failure to follow her physician's recommendation to stop smoking. An ALJ may rely on a claimant's inadequately explained failure to seek treatment or follow his or her physician's advice in rejecting a subjective complaint of disabling pain. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). Plaintiff testified that she smoked approximately fifteen or twenty cigarettes a day even though her doctor advised that she stop smoking due to her health problems. (A.R. 31.) Plaintiff offered no explanation for her failure to quit smoking, and she offered no evidence that she had attempted to quit. Substantial evidence supports the ALJ's rejection of Plaintiff's subjective claims of disability based on the inconsistency between her allegations of disabling pain and her unexplained failure to follow her treating physician's advice.

Thus, the Court rejects Plaintiff's challenge to the ALJ's credibility determination. The ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective complaints.

IV. Medical Opinion Evidence

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Dawson's medical opinion. Plaintiff points to Dr. Dawson's conclusion that Plaintiff was unable to work from May to

July 2003 due to limited endurance and many symptoms associated with Interferon treatment. (A.R. 67, 226,269.)

The opinion of a treating physician is entitled to deference because of a greater opportunity to observe the patient as an individual and because the purpose of the relationship is to cure the patient. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). However, an ALJ may disregard a treating physician's opinion whether or not it is contradicted. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

A treating physician's opinion that is controverted by other medical opinions may be rejected by an ALJ only if specific, legitimate reasons for doing so are provided and supported by substantial evidence in the record. Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989). This burden is met by stating a detailed and thorough summary of the facts and conflicting clinical evidence, stating the interpretation of the evidence, and making findings. Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir 1986). A failure to set forth a reasoned rationale for disregarding a particular treating physician's findings is legal error. Cotton v. Bowen, 799 F.2d at 1408.

The medical opinion of a nontreating doctor may be relied upon instead of that of a treating physician only if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The contradictory opinion of a nontreating but examining physician constitutes substantial evidence, and may be relied upon instead of that of a treating physician, where it is

based on independent clinical findings that differ from those of the treating physician. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinion of a nontreating, nonexamining physician can amount to substantial evidence so long as other evidence in the record supports those findings. <u>Saelee v.Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996).

Similarly, the opinion of a treating physician that speaks to the ultimate issue of disability (i.e., whether a claimant is capable of any work, given his or her limitations) may be rejected by an ALJ only with clear and convincing reasons supported by substantial evidence in the record if the opinion is uncontradicted; a treating physicians's controverted opinion on the ultimate issue of disability may be rejected by an ALJ if the ALJ provides specific and legitimate reasons. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202-02 (9th Cir. 2001).

In the present case, the ALJ stated the following:

> In June 2003 Dr. Dawson from the Health Services Agency stated that the claimant was unable to work due to limited endurance and many constitutional symptoms associated with Interferon treatment (Exhibit 8F/2). While I normally afford the opinion of a treating physician much deference, I reject Dr. Dawson's opinion becuase it is not well-supported by substantial evidence in the record. Specifically, treatment records from Health Services Agency fail to corroborate the symptoms associated with Interferon treatment referred to by Dr. Dawson (<u>see</u>, Exhibits 8F, 10F, 13F, 14F and 15F). <u>See</u>, Social Security Ruling 96-2p.
>
> Dr. Dawson's opinion is also inconsistent with the opinion of another physician at Health Services Agency, Dr. Cunningham, who stated in November 2003 that the claimant's "condition does not qualify for disability in my opinion" (Exhibit 15F/4). Dr. Cunningham further concluded that

> although the claimant was experiencing
> bloating, abdominal pain and lower extremity
> swelling with ambulation, she could do
> sedentary and light work with unlimited
> sitting and standing for 30 minutes at a time
> up to 4 hours per day (Exhibit 14F).

(A.R. 17.)

Dr. Dawson opined on June 2, 2003, that Plaintiff could not perform any tasks calling for a sustained effort and she suffered from limited endurance and "constitutional problems" associated with Interferon treatment. (A.R. 67, 226, 269.) Dr. Dawson concluded that Plaintiff was unable to work for a temporary period extending from May 2003 to July 2003. (A.R. 67, 226, 269.)

The ALJ rejected Dr. Dawson's opinion due in part to a lack of corroborating objective medical evidence. (A.R. 17.) An ALJ may reject the medical opinion of a claimant's treating physician where the opinion is unsupported by clinical findings and is also contradicted by the opinions of other examining physicians. <u>Young v. Heckler</u>, 803 F.2d 963, 968 (9th Cir. 1986). Moreover, a conclusory opinion that is unsubstantiated by relevant medical documentation may be rejected. <u>See Johnson v. Shalala</u>, 60 F.3d 1428, 1432-33 (9th Cir. 1995).

The record supports the ALJ's conclusion that Dr. Dawson's opinion was not supported by objective clinical findings. Plaintiff's treatment notes from February 2003 through November 2003 indicate that Plaintiff had active hepatitis C with elevated enzyme levels. (A.R. 275.) On April 7, 2003, Dr. Dawson noted that Plaintiff suffered from fatigue. However, it appears that Plaintiff received a referral for Interferon therapy from Dr. Dawson at her April 7, 2003, appointment, and thus it is unclear

19

1  whether the fatigue noted by Dr. Dawson at that appointment could
2  have been caused by the Interferon therapy. Similarly, other
3  occasional symptoms described in the treatment notes such as a
4  headache, weakness, and abdominal discomfort, are not identified
5  as being causally related to Plaintiff's Interferon therapy.
6  (A.R. 270-272.) Moreover, the record is unclear about both the
7  duration and intensity of the symptoms, and it does not specify
8  the period during which Plaintiff actually underwent Interferon
9  therapy. In fact, Plaintiff stated during her hearing on December
10  8, 2003, that she still needed to have a liver biopsy to
11  ascertain whether she was a candidate for Interferon treatment.
12  (A.R. 30.)

13      In summary, neither Dr. Dawson's nor Dr. Cunningham's
14  treatment notes identify any constitutional problems as being
15  caused by Interferon therapy. (A.R. 227, 228, 233, 270-73.)
16  Accordingly, substantial evidence supports the ALJ's conclusion
17  that Dr. Dawson's assessment of Plaintiff's inability to work was
18  not corroborated by objective medical evidence.

19      The ALJ also rejected Dr. Dawson's opinion because of a
20  conflicting opinion rendered by Dr. Cunningham. (A.R. 17.) Dr.
21  Cunningham opined that Plaintiff suffered from abdominal pain,
22  bloating, and swelling in the lower extremities following
23  ambulation, but she could perform sedentary and light work with
24  unlimited sitting, standing for between thirty minutes to one
25  hour at a time, and standing and walking for between two to four
26  hours a day total. (A.R. 266.) The parties disagree on whether
27  Dr. Cunningham was a treating or examining physician, and the ALJ
28  did not specify whether he considered Dr. Cunningham a treating

1 or examining source.

2     In order for Dr. Cunningham to be considered a treating

3 source, he must have provided Plaintiff with medical treatment or

4 evaluation and must have had an ongoing treatment relationship;

5 acceptable medical evidence must establish that Plaintiff saw the

6 source with a frequency consistent with accepted medical practice

7 for the type of treatment or evaluation required for Plaintiff's

8 medical condition. 20 C.F.R. § 416.902. It is established that

9 examining a patient once and writing a brief report based

10 primarily on medical history and subjective reports of symptoms,

11 where the physician has agreed to assist the Plaintiff in the

12 social security case, is insufficient. <u>Matney on Behalf of Matney</u>

13 <u>v. Sullivan</u>, 981 F.2d 1016 (9th Cir. 1992). Evidence to be

14 considered includes the number of times the source examined or

15 observed the patient, the length of time of the treatment

16 relationship, the involvement of the physician in prescribing

17 medications or other treatment, the extent of any communication

18 with other members of any treatment team, the extent of any

19 report or findings, and whether the frequency of treatment

20 reflected acceptable medical practice. <u>See</u> <u>Benton ex. rel. Benton</u>

21 <u>v. Barnhart</u>, 331 F.3d 1030, 1035-1039 (9th Cir. 2003).

22     Here, Dr. Cunningham saw Plaintiff in September and November

23 2003. Plaintiff stated during her hearing that she considered Dr.

24 Cunningham her "main medical doctor." (A.R. 30.) On September 4,

25 2003, Dr. Cunningham noted that Plaintiff was alert, well

26 nourished, had clear lungs, regular heart rate and rhythm, and

27 normal insight and judgment. (A.R. 271.) He further noted that

28 Plaintiff had negative lab results (test type unclear) and

complained of a headache. (A.R. 271.) Finally, Dr. Cunningham
made a referral for Plaintiff to return to the clinic in six
months for a checkup. (A.R. 271.) On November 14, 2003, Plaintiff
again saw Dr. Cunningham, who noted that Plaintiff complained of
abdominal discomfort but otherwise had no new complaints and was
"here to fill out medical forms." (A.R. 270.) Dr. Cunningham made
a referral for Plaintiff to come back to the clinic for a checkup
as required. (A.R. 270.)

        The record is inconclusive as to whether Dr. Cunningham was
a treating or examining physician. Dr. Cunningham apparently had
an ongoing relationship with Plaintiff spanning several months,
in which he made medical findings, gave Plaintiff referrals, and
analyzed lab results. (A.R. 270-71.) However, the record does not
indicate the extent of Dr. Cunningham's communications with any
other members of Plaintiff's treatment team, such as her
gastrointestinal specialist, and it is clear that Plaintiff's
second visit to Dr. Cunningham was motivated by her desire to
have medical forms completed. (A.R. 270.) Thus the Court finds
the record inconclusive as to Dr. Cunningham's status.

        Assuming that Dr. Cunningham was only an examining
physician, as Plaintiff alleges, the ALJ nevertheless provided
specific and legitimate reasons for rejecting the opinion of Dr.
Dawson based on the contradictory opinion of Dr. Cunningham. The
ALJ specifically noted that Dr. Cunningham opined that Plaintiff
"does not qualify for disability." (A.R. 17, 270.) The ALJ
further noted that Dr. Cunningham assessed a residual functional
capacity allowing Plaintiff to perform light and sedentary work
with standing for up to four hours per eight hour workday and

unlimited sitting. (A.R. 17, 266.) Dr. Cunningham saw Plaintiff
at a pertinent time in relation to her claims of disability and
made independent clinical findings consistent with the ALJ's
conclusion that Plaintiff's symptoms would not interfere with her
ability to perform work. (A.R. 17, 266, 270-71.) As noted above,
Dr. Cunningham found only one instance of abdominal pain and made
no mention of limited endurance or any other constitutional
symptoms specifically associated with Interferon treatment. (A.R.
270.) Accordingly, the ALJ's rejection of Dr. Dawson's opinion
based on the contradictory medical opinion of Dr. Cunningham is
supported by substantial evidence.

   As an additional basis for rejecting Dr. Dawson's opinion,
the ALJ relied on the disability assessment of Dr. Pong, a state
agency physician. (A.R. 17.) The findings of a nontreating,
nonexamining physician can amount to substantial evidence so long
as other evidence in the record supports those findings. Saelee
v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). Dr. Pong opined that
Plaintiff could occasionally lift twenty pounds, frequently lift
ten pounds, and sit, stand, and walk about six hours out of an
eight-hour workday. (A.R. at 238.) Dr. Pong's conclusion that
Plaintiff's Interferon treatment would not significantly limit
Plaintiff's functional capacity was supported by the findings of
Dr. Cunningham and the absence of any notation of constitutional
problems associated with Interferon treatment in Plaintiff's
medical records. (A.R. 27-75, 242, 279-80.) Dr. Pong's opinion
was thus supported by the medical evidence in the record,
including independent clinical findings. Accordingly, the ALJ
properly attributed significant weight to the opinion of Dr.

1  Pong, and the ALJ's reliance upon Dr. Pong's opinion was

2  supported by substantial evidence.

3      Thus, the Court rejects Plaintiff's assertion that the ALJ

4  improperly discredited Dr. Dawson in assessing Plaintiff's

5  residual functional capacity. The Court notes that even if Dr.

6  Dawson's opinion had been entitled to controlling weight,

7  Plaintiff nevertheless failed to produce evidence sufficient to

8  show that her impairment met the twelve-month duration

9  requirement to qualify for benefits.

10      V. Past Relevant Work

11      Plaintiff asserts that "the ALJ did not obtain all necessary

12  past relevant work information to deny at Step IV, as required by

13  SSR 82-62." (Pl.'s Br. 5.) The Court interprets this language as

14  a challenge to both the sufficiency of the evidence and the

15  technical adequacy of the ALJ's finding that Plaintiff could

16  perform past relevant work as a bartender.

17      An adjudicator may consider the nature of a claimant's past

18  occupation either as it was performed in the national economy or

19  as the worker herself or himself performed it. Pinto v.

20  Massanari, 249 F.3d 840, 845 (9th Cir. 2001); Sanchez v. Secretary

21  of Health and Human Services, 812 F.2d 509, 511 (9th Cir. 1987).

22  The Commissioner routinely relies on the Dictionary of

23  Occupational Titles (DOT)[3] in determining the skill level of past

24  work or ability to perform other work. The Commissioner may rely

25  on the general job categories of the DOT and Selected

26

27  _____

28      [3]All references to the DOT are to the United States Department of Labor,
    Dictionary of Occupational Titles, (4th ed. 1991).

1 <u>Characteristics</u>[4] as applicable to a claimant's prior work in

2 determining if a claimant can perform past relevant work; <u>see</u> 20

3 C.F.R. §§ 404.1566(d)(1) (use as the primary source of reliable

4 job information); § 404.1569 (use to classify exertional and

5 skill requirements). <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1276 (9th

6 Cir. 1990).

7        Although the Commissioner must make fairly detailed

8 findings in support of administrative decisions to permit

9 intelligent review by the courts, the Commissioner need not

10 discuss all the evidence in the record when making his or her

11 findings. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.2d 1393,

12 1394 (9th Cir. 1984). In the present case, Plaintiff relies on

13 Social Security Ruling (SSR) 82-62, which requires specific

14 findings as to the claimant's residual functional capacity, the

15 physical and mental demands of the past relevant work, and the

16 relation of the residual functional capacity to the past work.

17 SSR 82-62. Social Security Rulings are issued to clarify the

18 Act's implementing regulations and the agency's policies.

19 Although they do not have the force of law, they represent the

20 Commissioner's interpretation of the agency's regulations, and

21 they will be given some deference if they are not plainly

22 erroneous or inconsistent with the statute or regulations.

23 <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001);

24 <u>Quang Van Hang v. Bowen</u>, 882 F.2d 1453, 1457 (9th Cir. 1989).

25        Plaintiff's reliance on Social Security Ruling 82-62 as a

26

27        [4]All references to the <u>Selected Characteristics</u> are to the United States
28 Dept. of Labor, <u>Selected Characteristics of Occupations Defined in the Revised
Dictionary of Occupational Titles</u>, (1993).

basis for remand is without merit. First, the ALJ found that
Plaintiff could perform light work with occasional climbing.
(A.R. 18.) Second, the ALJ expressly found that based on her
residual functional capacity, Plaintiff could perform the job of
bartender. (A.R. 18.) Finally, the ALJ cited the specific
bartender job category in the DOT at 312.474-010. (A.R. 18.) The
ALJ's findings explicitly satisfy Social Security Ruling 82-62's
requirements as to Plaintiff's residual functional capacity and
its relationship to her past relevant work. (A.R. 18.) The ALJ's
reference to Plaintiff's "past work as a bartender" and his
immediate citation to the bartender job category in the DOT (A.R.
18), which contains a detailed description of the physical
demands of the bartender position, is sufficiently specific to
satisfy Social Security Ruling 82-62 and provide the Court with
an opportunity for intelligent review.

Reference to the DOT shows that the bartender position
cited by the ALJ requires the capacity to perform light work. DOT
242. This exertional requirement is consistent with the residual
functional capacity assigned to Plaintiff by the ALJ. (A.R. 18.)
The Selected Characteristics entry indicates that climbing is not
an activity required in the course of performing work as a
bartender. Selected Characteristics at 365. Thus, the limitation
to occasional climbing would not prevent Plaintiff from working
as a bartender. Accordingly, substantial evidence supports the
ALJ's conclusion that Plaintiff has the capacity to perform past

relevant work as a bartender.

The Court declines to reach Plaintiff's argument regarding the ALJ's alternative finding that Plaintiff could perform other work in the national economy because the ALJ did not err in denying disability benefits to Plaintiff at Step IV in the sequential evaluation process.

VI. <u>Recommendation</u>

Accordingly, Plaintiff's arguments should be rejected, and it should be concluded that the ALJ's decision was reached by the use of proper legal standards and is supported by substantial evidence.[5]

<u>RECOMMENDATION</u>

Accordingly, it IS RECOMMENDED that

1. Plaintiff's social security complaint BE DENIED; and

2. Judgment for Defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff Dorothy Clouse, BE ENTERED.

This report and recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court,

---

[5] No effort is made to evaluate the decision under the final rules which became effective after the ALJ's decision of July 11, 2000, and before the Appeals' Council's action of November 8,2002. <u>See</u> 65 Fed.Reg. 54747, 54782 (Sept. 11, 2000). Plaintiff's argument was one that the impairment met the listing, and not an argument that involved any provision regarding functional equivalence that could have been affected by the adoption of the final rules.

27

Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 6, 2006**                        **/s/ Sandra M. Snyder**
icido3                        UNITED STATES MAGISTRATE JUDGE